IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2684-WJM

TRACY V. LOPEZ,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DENIAL OF BENEFITS

This Social Security appeal is brought under 42 U.S.C. 1383 (c)(3). Plaintiff Tracy Lopez ("Plaintiff") challenges the final decision of Defendant, the Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), denying his application for supplemental security income ("SSI") disability benefits. After a hearing, the denial was affirmed by an administrative law judge ("ALJ"). For the reasons set forth below, the ALJ's decision is affirmed.

## I. BACKGROUND

Plaintiff who was born in 1972, applied for SSI in January 2013, alleging disability beginning in November 2008. (Administrative Record ("R.") (ECF No. 11) at 22, 16.) At issue in this appeal are the ALJ's reasons for rejecting his claims of disability during the relevant time period caused by Plaintiff's degenerative disc disease of the cervical spine with C7 nerve root compression and mild lumbar degenerative disc

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on or around January 23, 2017, and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

disease. (R. at 18.)

The Commissioner initially denied Plaintiff's SSI application on August 13, 2013. (R. at 16.) Plaintiff appealed and requested a hearing before an ALJ, which took place on April 30, 2015 in Pueblo, Colo. (*Id.*) The ALJ denied benefits by written opinion dated April 22, 2015, following the five-step sequential evaluation process.[2] (R. at 18–22.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 18, 2013, the application date. (R. at 18.) Although Plaintiff testified that he worked as a neighborhood canvasser, he only worked for eight days secondary to his limitations on walking and earned $493.00 in the fourth quarter of 2013. (*Id.*) The ALJ noted that this is considered an unsuccessful work attempt. (*Id.*)

At step two, the ALJ concluded that Plaintiff was diagnosed with degenerative disk disease of the cervical spine with C7 nerve root compression and mild lumbar degenerative disc disease. (*Id.*) The ALJ found that those "impairments impose more than minimal restriction on [Plaintiff]'s ability to perform basic work activities and therefore are 'severe' impairments within the meaning of the Regulations." (*Id.*)

At step three the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof in steps one through four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

2

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity to

> perform light work as defined in 20 CFR 416.967(b) except the [Plaintiff] can stand or walk up to six hours in an eight hour workday. He can push and pull with his lower extremities within the light exertional range. [Plaintiff] can push and pull occasionally in the light exertional range. He cannot climb ladders, ropes, or scaffolds. He can stoop, bend and crouch occasionally. He cannot crawl. [Plaintiff] can perform overhead reaching bilaterally occasionally. [Plaintiff] should avoid concentrated exposure to extreme cold, humidity, wetness, dampness, vibrations, unprotected heights, unprotected industrial machinery. He can perform work at the unskilled level.

(*Id.*) The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. At 19–20.) The ALJ found that his "residual functional capacity assessment is supported by the objective medical findings of cervical radiculopathy and mild degenerative lumbar disc disease as well as exam findings that support some signs and symptoms relative to these diagnoses." (R. at 22.) The ALJ "limited the [Plaintiff]'s exposure to environmental and workplace hazards to prevent exacerbation of pain due to exposure to conditions and as a safety precaution." (*Id.*)

At step four, the ALJ noted that Plaintiff had past relevant work as a construction laborer and a laundry worker. (R. at 22.) The ALJ concluded, "[t]he [Plaintiff] is limited to a light exertional range, which precludes all of his past work. Accordingly, the [Plaintiff] is unable to perform past relevant work." (*Id.*)

At step five, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education,

work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (R. at 23.) Accordingly, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, since January 18, 2013, the date the application was filed." (*Id.*)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (ECF 14 at 2.)[3] The Court therefore reviews the ALJ's decision as the Commissioner's final denial of benefits. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003.)

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax* , 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of

---

[3] All citations to docketed materials other than the administrative record are to the page number found in the CM/ECF header, which sometimes differs from a document's internal pagination.

substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

Plaintiff raises two arguments on appeal: (1) The ALJ failed to explain why he rejected the medical opinions regarding Plaintiff's lifting and sitting limitations reported by Dr. Carolyn Smallwood, D.O. and, (2) the ALJ's RFC finding is not supported by any substantial evidence in the record. (ECF No. 14 at 3.) The Court turns to each issue in turn.

### A.    ALJ's Treatment of Dr. Smallwood's Limitations

Plaintiff first argues that the ALJ failed to explain why he rejected Dr. Smallwood's report of lifting and sitting requirements. (ECF No. 14 at 9.) "Dr. Smallwood limited Plaintiff to five pounds of lifting, restricted sitting to six hours per day but only thirty minutes at one time, and stated that Plaintiff could never reach, but could rarely handle and finger." (*Id.*) Plaintiff alleges that "Dr. Smallwood's opinion of restrictions is uncontroverted." (*Id.*) According to the Plaintiff, "the problem is that the ALJ did not explain why he disagreed with Dr. Smallwood's five pound lifting restriction, or her limitation to sitting for thirty minutes at one time." Plaintiff notes that the five pound lifting restriction is "particularly relevant because it conflicts with the ALJ's finding that Plaintiff can perform light work. Light work requires lifting and carrying up to twenty pounds, with frequent lifting of up to ten pounds." (ECF No. 14 at 10.)

Furthermore, Plaintiff argues that "the ALJ did not account for Dr. Smallwood's thirty minute continuous sitting limitation despite specifically finding her sitting limitation to be relatively supported. [Dr. Smallwood's] sitting limitation is relevant because it

would interfere with sedentary jobs that might survive [Dr. Smallwood's] five pound lifting restriction." (*Id.*) Plaintiff contends that an "ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability" and here "the ALJ did not explain why he rejected Dr. Smallwood's lifting and sitting limitations despite finding her opinion entitled to some weight" (ECF No. 14 at 12).

The Tenth Circuit employs a two-step test to evaluate the ALJ's weighing of medical opinions. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must consider whether the opinion is entitled to controlling weight because it is both "well–supported by medically acceptable clinical or laboratory diagnostic techniques" and it is "consistent with other substantial evidence in the record." *Id.* Second, if the treating physician's opinion is not entitled to controlling weight, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons . . . . for the weight assignment." *Id.*

Here, the ALJ specifically noted that Dr. Smallwood "did not list any diagnoses" and that although Plaintiff "testified that Dr. Smallwood was one of his treating providers . . . her name does not appear in the treatment records during the period under consideration."[4] (R. at 22). Indeed, Dr. Smallwood's RFC finding is limited to a check-the-box form, with no examination history or examination records. (*See* R. at 519–20.) Moreover, Plaintiff's claim that Dr. Smallwood's opinion is uncontroverted is not accurate.

---

[4] Dr. Smallwood's physical residual functional capacity form was completed in march of 2015, approximately seven years after the motor vehicle accident in 2008. (R. at 22.)

Plaintiff first sought treatment with Dr. Jeffrey Jenks, M.D. in 2008. (R. at 20.) Plaintiff was not seen by Dr. Jenks again until April 2010, at which point Plaintiff reported "improvement in his back pain as a result of physical therapy but he continued to have posterior neck pain and paresthesias in the right arm and hand." (*Id.*) Dr. Jenks referred Plaintiff for cervical and lumbar epidural injections and Plaintiff was to follow up after these procedures. (*Id.*) Plaintiff did not comply with these procedures and did not pursue further treatment with Dr. Jenks. (*Id.*) The ALJ found that these "objective medical findings and exam findings support a light exertional level with reduced upper extremity pushing and pulling, occasional postural activities and limited overhead reaching with the right upper extremity." (R. at 20–21.) In October 2012, Plaintiff was seen as a new patient at Pueblo Community Health center, where he reported that he refused neck surgery, but had positive results with physical therapy. (R. at 21.) Plaintiff was referred for more physical therapy, but was discharged for failure to show up to his appointments. (*Id.*)

In 2013, Plaintiff was again seen at Southern Colorado Family Health Clinic, by Dr. Candace Murbach, D.O. (*Id.*) Dr. Murbach "observed that the [Plaintiff] climbed onto the exam table without difficulty, laid supine without difficulty. Had normal reflexes in his lower extremities. Normal strength in all extremities. Was able to heal [*sic*] toe walk, straight leg raises were negative. He decreased range of motion on forward bend due [to] stiffness and some moderate degree of pain. But he was able to go from a seated position to standing without hesitation or assistance." (*Id.*) Furthermore, "Dr. Murdoch indicated that she would fill out the social security disability form but he would

7

not qualify for disability and she encouraged him to go to vocational rehab for retraining for employment." (*Id.*) In these treatment notes, Plaintiff reported "walking more, working odd jobs, seeking a desk job, and riding his bike." (*Id.*) Plaintiff was again referred for physical therapy, but was discharged for failure to show up for appointments. (*Id.*)

In December 2014, Plaintiff was seen by Dr. Scott Davidson, M.D. for mechanical back pain. (*Id.*) Plaintiff indicated that he was managing his back pain with over the counter medication as needed. (*Id.*) Plaintiff indicated that his back pain was "exacerbated by sweeping, bending, lifting, prolonged walking, or getting up after prolonged sitting." (*Id.*) However, Plaintiff indicated that he was able to "do housework, take walks, help his dad with housework, and doe [*sic*] yard work." (*Id.*) Dr. Davidson prescribed a home exercise program and naprosyn.[5] (*Id.*)

In sum, three of Plaintiff's four treating physicians found that limiting restrictions were unnecessary. Thus, in considering the record as a whole, the ALJ noted that there was "little support for the extreme manipulative function limitations in the longitudinal treatment record. The record therefore *does* support the limits in the ALJ's RFC finding of only occasional overhead reaching, occasional pushing and pulling with the upper extremities and no crawling or climbing of ladders, ropes, or scaffolds, and

---

[5] Dr. Davidson renewed a Med 9 form used for the state disability program for 12 months with the intention of helping Plaintiff return to work over that time. (R. at 21.) However, the ALJ gave this opinion little weight because the form contains summary conclusions with no function by function analysis and because "Dr. Davidson's intentions [of] helping the claimant return to work suggest that Dr. Davidson was not convinced of total durational disability." (R. at 21–22.) Furthermore, Plaintiff does not object to the ALJ's discussion of Dr. Davidson's statements.

the finding that Plaintiff "has not reported dysfunction in the treatment record and testified that he has difficulty making a fist with his right hand, otherwise the manipulative limitations are simply not indicted." (R. at 22.) Accordingly, the ALJ gave Dr. Smallwood's "opinion some weight in that the sitting, standing and walking limitations are relatively appropriate, however, due to the [Plaintiff's] lumbar pain the [ALJ found] that six hours of standing and walking in an eight hour work day would accommodate [Plaintiff's] reports of pain and the reports of his extensive walking which are found throughout the record." (R. at 22.)

The Court concludes that the ALJ has adequately explained that Dr. Smallwood's opinion is not entitled to controlling weight because it is inconsistent with other substantial evidence in the record and he has made clear how much weight the opinion is given. The fact that the ALJ assigned different weights to different aspects of Dr. Smallwood's restrictions is also not reversible error. In the Court's view, the ALJ had sufficient evidence to dismiss Dr. Smallwood's opinion altogether. Therefore, the fact that the ALJ found that a portion of Dr. Smallwood's medical opinion did have record support does not reflect any error in the observation that other portions of Dr. Smallwood's medical opinion lack record support. *Cf. Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."). Thus, the Court rejects Plaintiff's first argument and concludes that the ALJ adequately explained why he rejected Dr. Smallwood's lifting and sitting limitations.

## B. Substantial Evidence

Plaintiff's second argument is that the ALJ's RFC finding is not supported by any substantial evidence. Plaintiff claims that the "ALJ's lifting restriction is not supported by substantial evidence." (ECF No. 14 at 14.) Plaintiff maintains that "the cervical MRI findings of a disc herniation causing severe lateral recess effacement with C7 nerve root compression, along with the ALJ's finding that [Plaintiff] has cervical radiculopathy, suggests that [Plaintiff's] lifting capacity is compromised. But those findings are not a gauge of the extent of restrictions. The ALJ is not allowed to speculate on [Plaintiff's] lifting capacity." (*Id.*)

The Court finds that here the ALJ's RFC finding is supported by substantial evidence. "There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. 'The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" *Chapo*, 682 F.3d at 1288 (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical advice on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949.

Thus Plaintiff's second argument also fails and the Court finds that the ALJ's conclusions were supported by substantial evidence and were sufficiently explained. The Court concludes that Plaintiff makes no showing that the ALJ applied an incorrect legal standard or committed any other reversible error in his RFC finding.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 6th day of February, 2018.

BY THE COURT:

William J. Martinez
United States District Judge